# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

TRACY SORAPURU                                    CIVIL ACTION
PLAINTIFF

VS                                                NO.17-7448

CORNERSTONE CHEMICAL                              SECTION.N MAG 5
DEFENDANT(S)

## SUPPLEMENT

### JURISDICTION

Jurisdiction is proper as this matter falls under federal question of violation of a federal statute, Title VII of the Civil Rights Acts of 1964, due to age and gender discrimination.

### PARTIES

Listed as Defendants here are Cornerstone Chemical

### COMPLAINTS

I.      Facts

I, Tracy Sorapuru began working for Cytec as a methanol operator trainee on February 07, 1994. I worked under Gene Tierney, supervisor for 13 years with an unblemished record.   During this period, I was promoted to shift firefighter in 2002.  In 2011 Cytec Ind. operation assets were sold to a newly created entity, Cornerstone Chemical Company.   I never had a written employee violation in 21 years.

Mr. Tierney was replaced by Stephen Bull (Bull) June 2014. Mr. Tierney spoke to HR about never encountering real estate work being perform by Tracy Sorapuru. I noted a distinct difference in governing styles between Tierney and Bull.  Specifically, Bull changed contractually agreed upon employee work schedules. Bull was constantly moving me around violating the union contract. Bull gave favorable job assignment to the employees he hired personally.  Bull also did not allow me to continue as trainer in the capacity of updating and procedures writing for new employees hired, even though I was a certified trainer, helped to create the training program, and helped to create the testing procedures for proficiency.   Bull would talk to the trainee that I work with and never me.  Bull was often belligerent when confronted with claims of contractual violations and often failed to communicate, returning emails, and phones call, from me.  I enlisted the help of

Union employees Pat Dunham and Debbie Williams to address Bull on the seniority and trainer program. Pat and Debbie had verbal conversation with Aaron Marquis and Chad Dantin (Bull Supervisor) and eventually filed a grievous to document his ongoing violations. (see attached exhibit 3)

That August 2014 Dylan Cochrane (Dylan) was hired by Bull. Dylan and I had a contentious working relationship. I filed several complaints with the Human Resources director Aaron Marquis (Marquis) to help settle the grievances between the two employees. I was invited to a meeting March 5, 2015 to address my grievances without Cochrane present with Bull and Marquis. Marquis met with Cochrane the day before to get his story. I expressed feelings of being set up during the meeting to her Union representative Pat Dunham who was present. I stated that Bull and Marquis wanted to place all the blame on me for a hostile work environment. Pat Dunham had to interject meeting that he also met with Dylan and received a different story of the incident from Dylan that was what I told him. I was attack by HR Marquis, and left the meeting distraught. Immediately afterwards I contacted EEOC because I felt I had no one to turn to.

During this time Andreas Hatch (Hatch) spoke with me about my use color printer for printing. Hatch emailed me to see him when I returns to work, I reply about printing personal item and apologized about the mistake printing. It was only a verbal conversation stating that the matter was handled, and no formal complaint was filed with the company. Andreas Hatch said to me he never once went to Marquis about that verbal conversation. Marquis found the email during his search of the my computer time after termination. Marquis also padlock my personal locker in hope to find a Realtor business of files and nothing was found. (witness by Pat Dunham)

After receiving no results from supervisor Bull or Marquis, I filed her complaint with the EEOC on March 6th, 2015. I knew the letters from the EEOC was mailed on March 30, 2015. (See attached exhibit 1) The investigator of my case verified this. Within 2 weeks, a reasonable time for the company to have received notification and perform an investigation, I was terminated pending 7 days investigation on April 14, 2015, pending investigation for running a real estate business while on the company time. At the time, CCC's main evidence was one real estate paper found on the printer. I stated the paper she did not recognize any knowledge of the paper. CCC then proceeded to changes the focus to my saved personal email on computer. Something many employees practice saving personal file on computer. Please note the day of termination Marquis was the subject of unfairness in a Union/Management meeting that I address to Plant Manager Paul Mikesell. Immediately afterwards, Marquis approach me to come to his office. I asked Union representative Debbie Williams and Pat Dunham to attend. Marquis handed me the one paper found after I stated didn't recognized the document Marquis handed me a termination for running a real estate business while working as CCC employee. I said to Debbie that he was retaliating against me after the EEOC contact.

II.    Law

Retaliation occurs when an employer takes materially adverse actions because the applicant or employee asserts rights protected by the EEO laws. In a case alleging that an employer took a materially adverse action because of protected activity, legal proof of retaliation requires evidence

that 1. An individual engaged in prior protected activity; 2. The employer took a materially adverse action; and 3. Retaliation caused the employer's actions.

In Roslyn G. McCoy v John M. McHugh the court found that the complainant made a viable claim of retaliation warranting investigation. McCoy v. McHugh, 2010 EEOPUB LEXIS 729, EEOC (IHS) 120100122, EEOC (IHS) 120100122 (E.E.O.C. Mar. 25, 2010). The complainant a former employee of the U.S. Army Corps of Engineer was subjected to unlawful retaliation for prior protected EEO activity. Id. 1. The Office of General Counsel notified the complainant that she had committed unlawful trespass and was a threat to security. Id. The complainant believed this was retaliation because she had a hearing pending on an EEO complaint. Id. The court found that the actions of the agency were designed to intimidate the complainant in retaliation for her claim. Id at 4

III.    Analysis

CCC's agents, Bull and Marquis, clearly committed retaliation against me.   I was engaged in a prior protected activity of filing a complaint against CCC with the EEOC.  CCC took a materially adverse action by firing Sorapuru two weeks after the notice of a charged was filed with the company.  The retaliation was taken by the agents of the Bull and Marquis who investigated and created allegedly false claims against myself.   Similarly to the defendants in McCoy, Bull and Marquis took actions in retaliation for CCC to dissuade me from following through with the EEOC complaint.

#2 Violations

Under La. R.S. 23: 332 (A)(1) did a hostile environment exist when Supervisor Bull routinely: ignored contractually obligated practices for scheduling and training, non-communication with senior employees, and with the help of Marquis forester a condition of disrespect by failing to address the abrasive nature of an employee.

Bull became my supervisor June 2014 and immediately started to change the working relationship with employees.  Bull did not address the concerns, which I first reported on October 6, 2014, about discrimination changes that affected the women and older employees.  As a result, the entire hourly woman quit and more than 50% of the older men quit the fire brigade. I began working with Dylan Cochrane, August of 2014.  Cochrane and I did not work together routinely because of the responsibilities as shift firemen. However, during routine shift changes the two were required to meet exchange gear and information.  During these times, I reported Cochrane as being continually verbally abrasive.  (see attached exhibit 2)

I followed with several charges with Human Resources.  Bull and Marquis remained silent about the situations.  After four formal complaints with Human Resource Manager Marquis and several attempts to communicate with supervisor Bull, I was granted another meeting.  I stated the meeting was an ambush and designed to place all responsibility of hostile behaviors on her. Bull

did many other things that were different from the previous supervisor. (witness by Dunham and Williams)

Bulls had a record of changing the contractually required scheduling. Bull also allowed strenuous training to occur which was responsible for the death of at least one employee and the quitting of many at CCC. Bull made a difference in the extra type of work assignments between Sorapuru and the people he personally hired. Bull stripped me of my training duties. I was a certified trainer with the company and as senior in the department helped to create the current training procedures and testing. Bull reach out to another white male in another unit to communicate the changes he wanted on the procedures I created. Bull created an environment to outcast me allowing things to deteriorate with fellow employees.

II.    Law

Under Louisiana law, if is unlawful any employer that intentionally discriminate against any current or potential employee with respect to terms, conditions, or privileges of employment based on age or sex. La. R.S. 23:332 (A) (1)

In Brooks v. Southern University and Arg. And Mech. College the court outlined 5 factors to determine if a harassment/hostile work environment existed. 2003-0231 (La.App. 4th Cir. 7/14/04),877So.2d 1194,1220 Hostile work environment is determined by the circumstances, such as (1) frequency of the discriminatory conduct; (2) its severity; (3) was the conduct physically threatening or humiliating, or offensive utterance; (4) whether it unreasonably interferes with an employee's work performance; and (5) the effect on the employee's psychological well-being. 21Id. 877 So.2d at 1220-21

The court in Burnett v. E Baton Rouge Parish Sch. Bd. decided in a case of reverse discrimination that the white coach at a predominately black did not meet the burden of harassment or hostile work environment to sustain his case. Burnett argued that having to teach a class out sided of physical education, the moldy condition of the health classroom, and lack of janitorial services were all forms of hostile work environment. Id. The court found that Burnett experiences were within the normal range for teachers and that the teachers that followed him never complain about the cosmetics issues of the school.

III.    Analysis

Bull and Marquis engaged in enough activity to make out an actionable hostile environment because of practices of discrimination, non-communication, and a failure to address a verbally abusive employee.

Bull frequently used discriminatory practices towards myself. Bull ignored my seniority often changing my schedule without communicating the changes. Bull refused to allow me to continue as trainer in the capacity of updating and procedures writing for new employees hired even though I was a certified trainer and helped to create the testing procedures for the firefighter.

Bull and Marquis humiliated me when the two prepared a meeting to place all the blame on me for the volatile relationship with Cochrane.

Bull's actions had severe consequences. Bull's resistance to suggestions about the strenuous training caused several employees to be injured and lead to the reported death of at least one employee. It also lead to the quitting of all hourly female and more than 50% of older employees.

Bull interfered with my work performance because he ignored a decade plus worth of experience and training with CCC and created a hostile environment. It is a logical leap that Bull's behavior was the reason that Cochrane, an employee hired by Bull felt it was okay to be verbally abrasive with me.

Bull continued devaluing of me and Marquis failure to adhere to common practices to decrease the hostilities between co-workers collectively constituted on "unlawful" employment practice.

Unlike the plaintiff in Burnett, whose complaints were within the normal range of teachers' experience, my job environment drastically changed after 21 years of service to the company and 14 years in the fire department. These changes were not based on new policies but the administration of the policies that had been in place for years. Bull and Marquis targeted older employees and allowed their newly hired employees to ignore experience creating a hostile environment.

#3 Violation

<u>Under EEOC guidelines for discipline and discharged did CCC treat less favorably when the company terminated her employment for a perceived violation company computer policy.</u>

I.      Facts

I was a licensed realtor for 14 years while working for CCC. It states that rule 4.20 allowed the use the internet at work for non-Cornerstone company business. A limited personal use is acceptable during non-work periods (paid breaks, paid lunchtime, etc) was consistent with Cornerstone's policy on appropriate use of information systems.

I was never formally disciplined for using the computer for personal use. I would save my personal emails on the computer for her free time. In March 2014 when the company changed its computer systems from Cytec employee Monica Montz in IT department uploaded the entire save documents. The company never mentioned a violation of its computer policies during that time. I use of the computer was below average accordingly to other Cornerstone employee IT employees. The use which was allowed during breaks and lunch from January to March showed 9000 hits in real estate sites. Because, I work over 70 days this computer use would be about 125 hits a work schedule not excessive accordingly to Cornerstone former IT employee Christine Steven. (See attached exhibit 4)

Andreas Hatch talked briefly about using the company's printers and never filed a formal complaint. I was not confronted again until she started filing complaints of harassment and problems with Stephen Bull, which lead to my eventual termination.

CCC had many employees with multiple jobs and there were at least two other employees that were realtors. Other violations of company policy included former fire department employee Corey Grainer who was only suspended for drawing porn on company products then subsequently suspended for 3 days after crashing the entire system with a movie website another 3 day suspension. Dwight Timmons had several violations because he was watching porn on the company computers before being eventually terminated from the company under the current HR direction on Dave Schnake and Aaron Marquis. A.J. Rousell operated a catering service every day leaving work for an hour to pick up and was allowed time for distribution of the food during his non-work periods. A.J. Rousell was never discipline and only warned. CCC have in place a seven lifesaving rule that employees like Sean Julian and Lacardio are subject to immediate terminations when violated. Julian, Lacardio and several employees only received suspension. (See attached exhibits 5) Lacardio a black male was eventually terminated while a white male employee was hire back under the same incident.

I.      Law

An employer may not take into account a person's race, color, religion, sex (including gender identity, sexual orientation, and pregnancy), national origin, age (40 or older), disability or genetic information when making decisions about discipline or discharge. For example, if two employees commit a similar offense, an employer many not discipline them differently because of their race, color, religion, sex (including gender identity, sexual orientation, and pregnancy), national origin, age (40 or older), disability or genetic information.

The court in Wright v. Bennett stated that the burden of proof to establish a claim of disparate treatment, a showing by the plaintiff of preferential treatment to employees outside the protected class must be nearly identical circumstances. Bartenders at the Sheraton Hotel Blount and Bennett were discharged because the investigation revealed irregularities in guest checks. Id. The court found that with regards to the proffered employees each employee had a different position, different supervisors, and was engaged in different conduct resulting in disciplinary action.

II.     Analysis

I was terminated for my computer use on company time. I stated that the paper-found on the printer she did not recognize it. It was a real estate paper and another co-worker was buying a house it could have been his paper.  I offers vastly contrasting punishment examples of similarly situated employees.

First, there were several other realtors at the company.  Second, punishment for computer use was vastly different between employees.  Employee Dwight Timmons had to be caught watching porn several times before being terminated.  Corey Gainer crashed the whole computer system before being suspended for only three days.  Finally, A.J. Rousell used company time to

operate a second catering business; selling his food to other employees was only verbally warned. CCC have in place a seven lifesaving rule that employees like Sean Julian and Lacardio are subject to immediate terminations when violated. Julian, Lacardio and several employees only received suspension. Also, Cornerstone inconsistent on employee punishment is based on sex, race and age. (See attached exhibits 5&6)

Unlike the plaintiffs in Wright, the employees were all under the same guidelines and supervisor for discipline. Each employee committed acts that were similar to use of the computer on company time and many having a second job. However, Dwight Timmons a white male committed several more offensives acts before being terminated.

Conclusion

I have more than sustained my claim of Retaliation, Harassment, Discrimination treatment towards myself.

DEMAND

I, Tracy Sorapuru respectfully pray for lost wages in the form of back pay and front pay, attorney fees, and any all- equitable relief available.

Dated 10/10/17

11/17/17

_Tracy Sorapuru_
Tracy Sorapuru
220 Beaupre Dr
Luling, La 70070
504-487-1409

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

Thank you for using the EEOC Assessment System. The information you gave us indicates that your situation may be covered by the laws we enforce. If you want to file a charge, you can start the process by filling out the Intake Questionnaire, signing it, and either bringing it or mailing it to the EEOC office listed below right away. If you live within 50 miles of the EEOC office listed below, we recommend that you bring the completed questionnaire with you to this office to discuss your situation.

EEOC New Orleans Field Office
1555 Poydras Street
Suite 1900
New Orleans, LA 70112

If you would like to bring the questionnaire to us in person instead of mailing it to us, please click http://www.eeoc.gov/field/index.cfm to find out the office hours of the EEOC office closest to you. If you would like to fax the questionnaire to us, please click http://www.eeoc.gov/field/index.cfm to find out the fax number of the office nearest to you.

You should be aware that filing a charge can take up to two hours. If you find that you are having difficulty completing the questionnaire on your own, you may call the number below for assistance.

Please be sure to:

- Answer all questions as completely as possible.
- Include the location where you work(ed) or applied.
- Complete all pages and sign the last page.
- Attach additional pages if you need more space to complete your responses.

You can find out more information about the laws we enforce and our charge-filing procedures on our website at www.eeoc.gov.

If you want to file a charge about job discrimination, there are time limits to file the charge. In many States that limit is 300 days from the date you knew about the harm or negative job action, but in other States it is 180 days. To protect your rights, it is important that you fill out the questionnaire, sign it, and bring it or send it to us right away.

**Filling out and bringing us or sending us this questionnaire does not mean that you have filed a charge.** This questionnaire will help us look at your situation and figure out if you are covered by the laws we enforce. If you live within 50 miles of the office listed above, we recommend that you bring the completed questionnaire to us to discuss your situation. If you mail the completed questionnaire to us, someone from the EEOC should contact you by mail or by phone within 30 days. If you don't hear from us in 30 days, please call us at **1-800-669-4000**.

Sincerely,

U.S. Equal Employment Opportunity Commission



# EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
## INTAKE QUESTIONNAIRE

Please immediately complete the entire form and return it to the U.S. Equal Employment Opportunity Commission ("EEOC"). **REMEMBER,** a charge of employment discrimination must be filed within the time limits imposed by law, generally within 180 days or in some places 300 days of the alleged discrimination. Upon receipt, this form will be reviewed to determine EEOC coverage. **Answer all questions as completely as possible, and attach additional pages if needed to complete your response(s). If you do not know the answer to a question, answer by stating "not known." If a question is not applicable, write "n/a." Please Print.**

**1.  Personal Information**

Last Name: SORAPURU                First Name: TRACY                MI: S

Street or Mailing Address: 220 BEAUPRE DR                Apt Or Unit #:

City: LULING                County: ST CHARLES                State: LA                ZIP: 70070

Phone Numbers: Home: ( 504 ) 487-1409                Work: ( 504 ) 431-6557

Cell: ( 504 ) 487-1409                Email Address: TASS3004@YAHOO.COM

Date of Birth: 07-24-1961                Sex: Male ☐  Female ☒                Do You Have a Disability? ☐ Yes  ☒ No

**Please answer each of the next three questions.**                i. Are you Hispanic or Latino? ☐ Yes  ☒ No

ii. What is your Race? Please choose all that apply.          ☐ American Indian or Alaska Native    ☐ Asian    ☐ White

☒ Black or African American    ☐ Native Hawaiian or Other Pacific Islander

iii. What is your National Origin (country of origin or ancestry)?  UNITED STATES

**Please Provide The Name Of A Person We Can Contact If We Are Unable To Reach You:**

Name: Tia Sorapuru                Relationship: Daughter

Address: 220 Beaupre dr                City: Luling                State: la   Zip Code:  70070

Home Phone: ( 504 ) 487-7626     Other Phone: (      )

**2. I believe that I was discriminated against by the following organization(s): (Check those that apply)**

☒ Employer   ☐ Union   ☐ Employment Agency   ☐ Other (Please Specify)

**Organization Contact Information** (If the organization is an employer, provide the address where you actually worked. If you work from home, check here ☐ and provide the address of the office to which you reported.) **If more than one employer is involved, attach additional sheets.**

**Organization Name:**  CORNERSTONE CHEMICAL

Address:  10800 RIVER ROAD                County: JEFFERSON

City: WESTWEGO                State: LA  Zip:  70058          Phone: ( 504 ) 431-6315

Type of Business: CHEMICAL              Job Location if different from Org. Address:

Human Resources Director or Owner Name: AARON MARQUIS                Phone: 504-431-6027

Number of Employees in the Organization at All Locations: Please Check (√) One

☐ Fewer Than 15   ☐ 15 - 100   ☐ 101 - 200   ☒ 201 - 500   ☐ More than 500

**3.  Your Employment Data** (Complete as many items as you can)     Are you a Federal Employee? ☐ Yes  ☒ No

Date Hired: 02/06/1995                Job Title At Hire: OPERATOR

Pay Rate When Hired: 11.95                Last or Current Pay Rate: 29.49

Job Title at Time of Alleged Discrimination:  SHIFT FIREMAN                Date Quit/Discharged:  NA

Name and Title of Immediate Supervisor: STEPHEN BULL

If Job Applicant, Date You Applied for Job _____ Job Title Applied For _____

**4. What is the reason (basis) for your claim of employment discrimination?**
*FOR EXAMPLE, if you feel that you were treated worse than someone else because of race, you should check the box next to Race. If you feel you were treated worse for several reasons, such as your sex, religion and national origin, you should check all that apply. If you complained about discrimination, participated in someone else's complaint, or filed a charge of discrimination, and a negative action was threatened or taken, you should check the box next to Retaliation.*

☐ Race ☒ Sex ☒ Age ☐ Disability ☐ National Origin ☐ Religion ☐ Retaliation ☐ Pregnancy ☐ Color (typically a difference in skin shade within the same race) ☐ Genetic Information; choose which type(s) of genetic information is involved:

☐ i. genetic testing ☐ ii. family medical history ☐ iii. genetic services (genetic services means counseling, education or testing)

If you checked color, religion or national origin, please specify: _____

If you checked genetic information, how did the employer obtain the genetic information? _____

Other reason (basis) for discrimination (Explain). _____

**5. What happened to you that you believe was discriminatory?** Include the date(s) of harm, the action(s), and the name(s) and title(s) of the person(s) who you believe discriminated against you. **Please attach additional pages if needed.**
*(Example: 10/02/06 – Discharged by Mr. John Soto, Production Supervisor)*

A) Date: 02/18/2015     Action: Supervisor call me to office to talk to me about a complaint from co worker Dylan C. He told him I left work without making relief with him. Supervisor inform me he believe him

Name and Title of Person(s) Responsible: Stephen Bull -Safety supervisor

B) Date: 03/04/2015     Action: Human Resource was contacted because the coworker behave I feel was making my work place a hostile environment. He knew the Supervisor did not like me.

Name and Title of Person(s) Responsible: Aaron Marquis

**6. Why do you believe these actions were discriminatory? Please attach additional pages if needed.**
The coworker behavior escalated because the immediate supervisor did not handle it and the coworker continue with his behavior. The HR continue by bashing me about why I couldn't be more flexible about a company rule that he put I and I explain to coworker. I met with a HR personnel that was finding fault in me. I explain how the Supervisor makes difference with me and the others. I gave him an example and could have give more. But was stop when the first example was noted as you cant do that need to be corrected.

**7. What reason(s) were given to you for the acts you consider discriminatory? By whom? His or Her Job Title?**
Nothing was address to my claim of hostile work environment. The HR was hostile & not believing me. I have met with HR before about the supervisor not communicating with me. The Supervisor communicates with the employees he hire in with him. (all male and younger) I am an older employee. The new Supervisor changed the training that is more of a challenge for an older person & female. I work the job for 15 years& never had to utilized that type of training. He makes difference by using their skills not mines.

**8. Describe who was in the same or similar situation as you and how they were treated. For example, who else applied for the same job you did, who else had the same attendance record, or who else had the same performance? Provide the race, sex, age, national origin, religion, or disability of these individuals, if known, and if it relates to your claim of discrimination. For example, if your complaint alleges race discrimination, provide the race of each person; if it alleges sex discrimination, provide the sex of each person; and so on. Use additional sheets if needed.**

Of the persons in the same or similar situation as you, who was treated *better* than you?

| A. Full Name | Race, sex, age, national origin, religion or disability | Job Title |
|---|---|---|
| Dylan Cochrane | white, male,27 | Shift fireman |

Description of Treatment Dylan is allow to maintain his CPR training. I am a certified trainer at the company and the supervisor refuse to utilize my training or help maintain my skills. He also give them more work hours.

| B. Full Name | Race, sex, age, national origin, religion or disability | Job Title |
|---|---|---|
| Mark Giaomonte(spelling?) | white,male,40 | shift fireman |

Description of Treatment Supervisor would work the schedule to help him more or change it to accommodate his time/needs. Whereas, I am taken off my shift and changed my vacations to accommodate the company needs.

**Of the persons in the same or similar situation as you, who was treated *worse* than you?**

| A. Full Name | Race, sex, age, national origin, religion or disability | Job Title |
|---|---|---|
| | | |

Description of Treatment

| B. Full Name | Race, sex, age, national origin, religion or disability | Job Title |
|---|---|---|
| | | |

Description of Treatment

**Of the persons in the same or similar situation as you, who was treated the *same* as you?**

| A. Full Name | Race, sex, age, national origin, religion or disability | Job Title |
|---|---|---|
| Sharon Amerson | white,female,40 | Shift fireman |

Description of Treatment He did not communicate with her but he knew she was leaving the department by end of the 2014 year. She would just handle her job knowing her time was limited to be in that position. Mark took over her spot.

| B. Full Name | Race, sex, age, national origin, religion or disability | Job Title |
|---|---|---|
| "Shoelace" | white, male, 58? | volunteer emergency response |

Description of Treatment He did not communicate with him. He was not interested in working with any of the previous volunteers. He wanted everyone to do agility test. This test was discriminating if not properly trained for it.

Answer questions 9-12 <u>only</u> if you are claiming discrimination based on disability. If not, skip to question 13. Please tell us if you have more than one disability. Please add additional pages if needed.

9. Please check all that apply:

☐ Yes, I have a disability

☐ I do not have a disability now but I did have one

☐ No disability but the organization treats me as if I am disabled

10. What is the disability that you believe is the reason for the adverse action taken against you? Does this disability prevent or limit you from doing anything? (e.g., lifting, sleeping, breathing, walking, caring for yourself, working, etc.).



11. Do you use medications, medical equipment or anything else to lessen or eliminate the symptoms of your disability?

Yes ☐   No ☐

If "Yes," what medication, medical equipment or other assistance do you use?



12. Did you ask your employer for any changes or assistance to do your job because of your disability?

Yes ☐   No ☐

If "YES", when did you ask? _____   How did you ask (verbally or in writing)? _____

Who did you ask? (Provide full name and job title of person)



Describe the changes or assistance that you asked for:



How did your employer respond to your request?

**13. Are there any witnesses to the alleged discriminatory incidents? If yes, please identify them below and tell us what they will say. (Please attach additional pages if needed to complete your response)**

| A. Full Name | Job Title | Address & Phone Number |
|---|---|---|
| Pat Dunham | Warehouse worker/union rep | 985-791-8246 |

**What do you believe this person will tell us?**

He was in several meeting involving the supervisor and myself about his communication. Also, about my claim of hostile work environment.

| B. Full Name | Job Title | Address & Phone Number |
|---|---|---|
| Debbie William | DCS Operator/union rep | 985-209-3235 |

**What do you believe this person will tell us?**

She as a female had conversation with Stephen Bull(Supervisor) about the schedules, communciation and utilizing my skills on training.

**14. Have you filed a charge previously in this matter with EEOC or another agency?**   Yes ☐   No ☒

**15. If you have filed a complaint with another agency, provide name of agency and date of filing:**


**16. Have you sought help about this situation from a union, an attorney, or any other source?**   Yes ☒   No ☐

Provide name of organization, name of person you spoke with and date of contact. Results, if any?

Union representative have met with Supervisor and HR about this employee behavior many times. Now, its spilling over into the coworker treatment towards me and my work place is hostile now.

**Please check one of the boxes below to tell us what you would like us to do with the information you are providing on this questionnaire.** If you would like to file a charge of job discrimination, you must do so either within 180 days from the day you knew about the discrimination, or within 300 days from the day you knew about the discrimination if the employer is located in a place where a state or local government agency enforces laws similar to the EEOC's laws. If you do not file a charge of discrimination within the time limits, you will lose your rights. If you would like more information before filing a charge or you have concerns about EEOC's notifying the employer, union, or employment agency about your charge, you may wish to check Box 1. If you want to file a charge, you should check Box 2.

Box 1   ☐ I want to talk to an EEOC employee before deciding whether to file a charge. I understand that by checking this box, I have not filed a charge with the EEOC. **I also understand that I could lose my rights if I do not file a charge in time.**

Box 2   I want to file a charge of discrimination, and I authorize the EEOC to look into the discrimination I described above. I understand that the EEOC must give the employer, union, or employment agency that I accuse of discrimination
☒ information about the charge, including my name. I also understand that the EEOC can only accept charges of job discrimination based on race, color, religion, sex, national origin, disability, age, genetic information, or retaliation for opposing discrimination.

_Tracy Sorapuru_                                    MARCH 6,2015
Signature                                                Today's Date

**PRIVACY ACT STATEMENT:** This form is covered by the Privacy Act of 1974: Public Law 93-579. Authority for requesting personal data and the uses thereof are:
1. **FORM NUMBER/TITLE/DATE.** EEOC Intake Questionnaire (9/20/08).
2. **AUTHORITY.** 42 U.S.C. § 2000e-5(b), 29 U.S.C. § 211, 29 U.S.C. § 626. 42 U.S.C. 12117(a), 42 USC §2000ff-6.
3. **PRINCIPAL PURPOSE.** The purpose of this questionnaire is to solicit information about claims of employment discrimination, determine whether the EEOC has jurisdiction over those claims, and provide charge filing counseling, as appropriate. Consistent with 29 CFR 1601.12(b) and 29 CFR 1626.8(c), this questionnaire may serve as a charge if it meets the elements of a charge.
4. **ROUTINE USES.** EEOC may disclose information from this form to other state, local and federal agencies as appropriate or necessary to carry out the Commission's functions, or if EEOC becomes aware of a civil or criminal law violation. EEOC may also disclose information to respondents in litigation, to congressional offices in response to inquiries from parties to the charge, to disciplinary committees investigating complaints against attorneys representing the parties to the charge, or to federal agencies inquiring about hiring or security clearance matters
5. **WHETHER DISCLOSURE IS MANDATORY OR VOLUNTARY AND EFFECT ON INDIVIDUAL FOR NOT PROVIDING INFORMATION.** Providing of this information is voluntary but the failure to do so may hamper the Commission's investigation of a charge. It is not mandatory that this form be used to provide the requested information.

www.sportshirtoutlet.com    Cornerstone Apparel | sportshirtoutlet.com - Free Shipping For Orders O...     Sponsored

**Fw: ERT Physicals**

From: "Sorapuru   Tracy" <Tracy.Sorapuru@comerstonechemco.com>     Sunday, February 1, 2015 3:29 PM

To: "tass3004@yahoo.com" <tass3004@yahoo.com>

---

**From:** Sorapuru, Tracy
**Sent:** Monday, October 6, 2014 7:51 AM
**To:** Marques, Aaron; Bull, Stephen
**Subject:** Fw: ERT Physicals

Stephen, Thanks for the form explaining what is ERT agility test consist of. What is your expectation of Emergency response team? I ask this because others ask me and I like to be able to response properly. Aaron, The test sounds discriminatory to woman and age based on test of strength or type of physical ability he is testing. I am concern like many in my category. Thanks
Tracy S

---

**From:** Sorapuru, Tracy
**Sent:** Monday, October 6, 2014 7:14 AM
**To:** Bull, Stephen
**Subject:** Re: ERT Physicals

Stephen,

What is your physical agility test? What does it consist of outside of our normal yearly physical? What is your expectation of Emergency response team? The test sounds discriminatory to woman and age based on test of strength or type of physical ability you testing. Thanks for your time.
Tracy Sorapuru

---

**From:** Bull, Stephen
**Sent:** Wednesday, October 1, 2014 12:37 PM
**To:** Sorapuru, Tracy; Giacontiere, Mark; Amerson, Sharon; Riebow, Joseph; Bolden, Matthew; Cochrane, Dylan
**Cc:** Naquin, Natalie; LeBouef, April
**Subject:** ERT Physicals

All,

Please ensure that you schedule your ERT Physical with Natalie or April in Medical.

It is imperative that this is done as soon as possible.

Thanks.

**Stephen G. Bull, CFPS, FSO**
Fire Chief & Security Supervisor
O: 504-431-6558
C: 504-432-9879



**Cornerstone Chemical Company**
Building value, together.

Legal Notice
This electronic communication, including any attachments, contains information from Cornerstone Chemical Company or its subsidiaries that may be legally privileged, confidential, and exempt from disclosure under applicable law. If you are not the intended recipient, any use or dissemination of this communication or its attachment(s) is strictly prohibited and may be illegal. If you have received this communication in error, please notify the sender immediately, destroy any printed copies and delete it from all computers on which it may be stored.
Cornerstone Chemical Company

www.sportshirtoutlet.com    Cornerstone Apparel | sportshirtoutlet.com - Free Shipping For Orders O...    Sponsored

**Fw: *** Invitation to join the Site Emergency Response Team ***

From:    "Sorapuru    Tracy" <Tracy.Sorapuru@cornerstonechemco.com>    Sunday, February 1, 2015 3:31 PM

To:    "tass3004@yahoo.com" <tass3004@yahoo.com>

2 Files    99KB    Download All

| DOCX  50KB | DOCX  49KB |
| ERT Open Letter.doc x | ERT Applicatio n.docx |
| Save | Save |

---

From: Marques, Aaron
Sent: Friday, August 29, 2014 10:56 AM
Subject: *** Invitation to join the Site Emergency Response Team ***

Please see the note below regarding the Fortier site Emergency Response Team.

---

To All Fortier employees,

Attached to this e-mail is an open letter to all Fortier site employees who are looking to serve on our on-site Emergency Response Team.  This letter will explain some of the re-organization of the team, our path forward, and will hopefully shed light on the direction we are hoping to take our team.

Along with the e-mail, there will be an application.  Any current or former members of the site's Fire Brigade, who are still interested in serving on the team please fill out the application.   For anyone who is interested, and has not served on the team, or is new to the facility, please fill out the application as well.

Applications will be accepted until 7 AM on Monday, September 8.  Applications can be dropped off to the Security Staff or Night Super at the Main Gate, and they can be dropped off in the basket outside of the Fire Chief's door at the Fire Station.

Thank you for your cooperation, and I look forward to working with everyone.

**Stephen G. Bull, CFPS, FSO**
Fire Chief & Security Supervisor
O: 504-431-6558
C: 504-432-9879



**Cornerstone Chemical Company**
Building value, together.

Legal Notice
This electronic communication, including any attachments, contains information from Cornerstone Chemical Company or its subsidiaries that may be legally privileged, confidential, and exempt from disclosure under applicable law. If you are not the intended recipient, any use or dissemination of this communication or its attachment(s) is strictly prohibited and may be illegal. If you have received this communication in error, please notify the sender immediately, destroy any printed copies and delete it from all computers on which it may be stored.
Cornerstone Chemical Company

**Attn: Fortier Site Personnel,**

This is an open letter to all Fortier Site Personnel who are interested in serving on the plant's Emergency Response Team.

Previously, we were known as the Fire Brigade and Rescue Team. From this point forward, we will be known as the **Cornerstone Chemical (Fortier) Emergency Response Team.** This was done show that we will be an all-inclusive emergency response service, one which will provide response to all emergencies, i.e. fire, rescue, and hazardous materials.

For those who are interested in serving on the team, our medical department will conduct an enhanced medical screening process to ensure that they are physically capable of performing the demanding tasks that are required of an emergency responder. As part of this process there will be an ERT physical agility test, which will be a seven station test that will test each member's stamina, physical agility, and strength. A copy of the agility test format will be attached to this e-mail. We will be conducting some trial runs of the physical agility test in the month of September. We will need two participants from the age groups of 20's, 30's, 40's, & 50's. If anyone is interested, please feel free to call or e-mail myself, or stop by the fire station to inquire. During these trial runs, a physical therapist from River Region Rehab will determine what the qualifying times and scores necessary to serve on the team will be. If you have any specific questions regarding the medical screening process please contact the medical department.

For those individuals who may not want to go through the test, or are not able to qualify, you will still have a part on the team. There will be a separate support function. The organization realizes that there is more to emergency response than what goes on out in the field. We would still like to utilize those members' knowledge and skills to improve our emergency response services.

The organization is looking to send our team members through Industrial Fire, Rescue, & Hazardous Materials Training. Along with this training, there are regulatory driven annual refresher training requirements. It is imperative for those on the team to attend these refresher trainings. This will be communicated to all supervisors and managers.

Cornerstone appreciates anyone who volunteers their time to serve on this team. We understand our ERT Team protects our lives, our neighbor's lives, and our livelihood.

If you are interested in joining, please fill out an application. You can bring it to the fire station and drop it in the basket outside of the fire chief's office, or scan it and e-mail it to the address below.

Respectfully,

*Stephen G. Bull, CFPS, FSO*
stephen.bull@cornerstonechemco.com
(504)-431-6558

# Cornerstone Chemical ERT
# Membership Application

**PERSONAL INFORMATION**

Name: _____ E-Mail Address: _____

**EMPLOYMENT INFORMATION**

Shift: _____Unit: _____Hours: _____

Phone Number: _____ Supervisor: _____

Job Title: _____

APPLICANT SIGNATURE: _____

DATE:_____



# GRIEVANCE REPORT

**DATE:** 04-15-2015

**Local 13-447**
LOCAL NUMBER

**GRIEVANCE NUMBER:** 2015-09

**MEMBER'S NAME:** Tracy Sorapuru

**CLOCK NUMBER:** 3004

**COMPANY:** Cornerstone ChemCo

**DEPARTMENT:** Fire house / Services

**SUPERVISOR:** Stephen Bull

**WHEN DID GRIEVANCE OCCUR? DATE (on or about)** 4-14-2015 **TIME** 952 Am

**GRIEVANCE REPORTED BY:** Debbie Williams

---

## COMPLAINT

The Union charges the Company with a specific violation of Article/s 24.1 & 1.8
and any other provisions of the Agreement that may be found to apply.

STATE WHAT HAPPENED: Ms Sorapuru was asked to HR by Aaron Marques right after Union Mang. meetings. Once over there Ms Sorapuru was accused of running a personal business from work. An alleged copy of a business form was found on copy machine.

**REMEDY REQUESTED** Reduce dicipline to a verbal. Ms. Sorapuru has no record of disipline in her file. Punishment was over the top. There seems to be a pattern of harsh punishment of Females. This practice needs to cease immediately

plus the Union demands that the Company cease and desist from violating the Collective Bargaining Agreement, that the incident(s) be rectified, that proper compensation, including benefits and overtime, at the applicable rate of pay, be paid for all losses; and further that those affected be made whole in every respect, including interest on any monies owed.

PRINT NAME Debbie H Williams

SIGNATURE FOR THE UNION Debbie H Williams

DATE SUBMITTED 04-16-2015

PRINT NAME Lynell Sherrill

SIGNATURE FOR THE COMPANY Lynell Sheill

DATE RECEIVED 4-16-15

EXHIBIT
3

# Cornerstone Chemical Company

| SUBJECT: Work Rules | Policy No. | HR-001 |
|---|---|---|
| | Date Revised | 9/10/14 |
| APPROVED BY: *David Schnake, Director of Human Resources* | Date Issued | 3/1/2011 |
| | Page | 3 of 4 |

4.11 Leaving the job or assigned work area without permission or without being properly relieved, being in an unauthorized work area, quitting early or otherwise wasting time or interfering with production. Changing clothes or bathing at unauthorized times.

4.12 Unsatisfactory work performance

4.13 Falsifying or misrepresenting production or other Company records.

4.14 Disclosure of confidential information to unauthorized persons

4.15 Theft of or unauthorized possession of Company property or property of others

4.16 Neglect of duty including sleeping or apparently sleeping on Company property or on Company time, job abandonment, or other inattention to duty.

4.17 Failure to properly report your absence in advance of the start of your normally scheduled shift

4.18 Excessive tardiness and absenteeism

4.19 Unauthorized posting on Company bulletin boards or defacing Company bulletin boards or material thereon

4.20 Using the Internet at work for non-Cornerstone Chemical Company business. A limited personal use is acceptable during non-work periods (breaks, lunchtime, etc.) consistent with Cornerstone's policy on appropriate use of information systems

4.21 Using abusive or profane language or acting disorderly or immorally

4.22 Solicitation during work time ("work time" does not include authorized break or meal times). Unauthorized distribution of written or printed matter on Company property during work time

4.23 Performing unauthorized personal work on company time

## Administration

The Human Resource Department is responsible for coordinating the fair and consistent administration of employee disciplinary activity, have general oversight of the investigatory process, and have approval authority for disciplinary suspensions and discharge. Each supervisor is responsible for conducting a fair and objective investigation into incidents where a work rule violation may have occurred and are responsible for initiating corrective actions when work rule violations are found to occur. Note that nothing hereto in this policy is intended to

Exhibit 4

# Agent Production & Inventory Report

Date Range : 01/01/2015 to 07/07/2015

## TRACY SORAPURU (ID: SORAPURT)

## Production Section

| | Count | List $ Volume | Sold $ Volume | Avg List Price | Avg Sold Price | SP % LP |
|---|---|---|---|---|---|---|
| Total Sold / Entire MLS | 8,773 | $1,973,254,038 | $1,896,069,176 | $224,924 | $216,126 | 96.40 |
| Listed | Sold | 0 | $0 | $0 | $0 | $0 | 0.00 |
| Listed | In-House Sold | 0 | $0 | $0 | $0 | $0 | 0.00 |
| Listed | Coop Sold | 0 | $0 | $0 | $0 | $0 | 0.00 |
| Listed In-House | Sold | 0 | $0 | $0 | $0 | $0 | 0.00 |
| Coop Listed | Sold | 1 | $82,000 | $74,250 | $82,000 | $0 | 0.00 |
| Total | 1 | $82,000 | $74,250 | $82,000 | $74,250 | 90.55 |

### Coop Listed | Sold

| MLS# | Street Address | City | List Price | Sold Price | List Date | Sold Date | DOM |
|---|---|---|---|---|---|---|---|
| 1015533 | 4836 MAJESTIC OAKS | New Orleans | $82,000 | $74,250 | 12/19/2014 | 04/06/2015 | 81 |

## Inventory Summary

### Vacant Land

| Status | Count | Total Price | Average Price |
|---|---|---|---|
| Active | 2 | $39,900 | $19,950 |
| Property Type Total | 2 | $39,900 | $19,950 |
| Grand Total | 2 | $39,900 | $19,950 |

## Inventory Detail

### Vacant Land

#### Active

| MLS # | Street Address | City | Org Price | List Price | List Date | Status Date | DOM |
|---|---|---|---|---|---|---|---|
| 1021081 | MILLIE | Avondale | $11,900 | $11,900 | 02/12/2015 | 02/12/2015 | 144 |
| 2007139 | 5122 LAFAYE | New Orlenas | $28,000 | $28,000 | 04/13/2015 | 04/13/2015 | 84 |

Exhibit 42

In reference to the URL category

**PLEASE NOTE MY HOURS WORK PER WEEK FROM 1/1/15- 4/14/15**

PAY WEEK - 1/8/15- HRS **34.38**

PAY WEEK 1/15/15 HRS **84.96**

PAY WEEK 1/22/15 HRS **54.48**

PAY WEEK 1/29/15 HRS **60.48**

PAY WEEK 2/05/15 HRS **72.70**

PAY WEEK 2/12/15 HRS **60.21**

PAY WEEK 2/19/15 HRS **80.05**

PAY WEEK 2/26/15 HRS **76.35**

PAY WEEK 3/05/15 HRS **48.62**

PAY WEEK 3/12/15 HRS **59.63**

PAY WEEK 3/19/15 HRS **70.51**

PAY WEEK 3/26/15 HRS **72.37**

PAY WEEK 4/02/15 HRS **72.12**

PAY WEEK 4/09/15 HRS **56.00**

PAY WEEK 04/16/15 HRS **48.2** (48 HRS WAS VACATION TIME) 2 DAYS

**ACTUALLY WORKED TOTAL 79.5 (12 HOURS) DAYS MINUS 7.5 WAS VACATION DAYS** TAKEN

Additional → Exhibit 4

c) Effective 2001, expand five (5) day provision to include parents.
d) Funeral leave for grandchildren will be increased from 3 days to 5 days for Local Union Agreements that do not provide such.
e) For clarification proposes, "parent" under the local collective bargaining agreements shall cover the parent(s) (mother and father) of the employee.

## ARTICLE XXIV
### Discharge and Suspension

24.1 In the event an employee is to be discharged for just cause, he shall first be suspended for a period of seven (7) calendar days, and his Shop Steward shall immediately be notified in writing thereof, with a copy of such notice to the Union, and be given the reasons therefore. If no grievance with respect to the proposed discharge is initiated within seven (7) calendar days after the date on which notice of the suspension was first given to the Shop Steward, such suspension shall automatically be converted into a discharge at the end of such seven (7) day period and shall be effective as of the first day of the suspension. If a grievance should be filed as a result of the suspension, such grievance will proceed directly to the step in the grievance procedure just prior to arbitration.

## ARTICLE XXV
### Workmen's Compensation Waiting Period

25.1 In case of a compensable injury or a compensable occupational disease of an employee (which is not the fault of the employee) is incurred in the performance of his duties, the Company will:

(a) Pay compensation at his job rate for the balance of the standard shift on which the employee is working when the injury occurs, provided he is unable to continue at work as a result of the injury and is sent home (or for medical treatment) by an authorized representative of the Company, and

(b) Pay compensation at the rate provided by Louisiana Worker's Compensation Law for the preliminary or waiting period during which time the State Law does not require compensation payments.

25.2 This clause is in no way to prejudice or be in conflict with the operation of the Louisiana Worker's Compensation Law in respect to the Company's liability as to the determination of whether or not the injured person is able to work, or in any other way, but is merely compensation additional to that provided under the Compensation Law.

## ARTICLE XXVI
### Duration of Contract

26.1 This Contract shall remain in effect until June 22, 2017, 12:00 midnight, and shall automatically renew itself thereafter for periods of one (1) year unless either party has notified the other in writing not less than sixty (60) days prior to the above expiration date or annual expiration thereafter that a termination or modification is desired.

26.2 This Contract represents the full and complete understanding between the parties on all issues which were or might have been subject to collective bargaining and it is understood that it may be modified or added to only if the parties hereto mutually agree.



January 9, 2013

### Harassment Policy

Harassment is verbal, physical or visual conduct of a sexual, racial, ethnic or other nature which, in the employee's opinion, impairs his or her ability to perform the job, or creates an offensive or hostile work environment. Harassment is contrary to basic standards of conduct between individuals.

Cornerstone Chemical Company will not condone or tolerate the harassment of its employees by their coworkers, supervisors or any individuals under our control. All employees, regardless of position or title, will be subject to severe discipline, up to and including termination of employment, should the plant determine that an employee is engaged in the unlawful harassment of another employee. The plant will promptly and thoroughly investigate the facts and circumstances of any claim of harassment.

If you feel that you are being subjected to harassment, you should report this matter directly to your supervisor immediately, or, if you would prefer to discuss the matter with someone else, report the issue to the supervisor's superior or to another manager of the plant. No one will be subject to, and the plant prohibits, any form of discipline or retaliation for reporting incidents of unlawful harassment or pursuing any such claim of harassment.

David Schnake
Director of Human Resources





**Building value, together.**

January 9, 2013

## Equal Opportunity Policy

Cornerstone Chemical Company is an equal employment opportunity employer and strives to comply with all applicable laws prohibiting discrimination based on race, color, creed, sex, age, national origin or ancestry, physical or mental disability, pregnancy, veteran status, marital status, citizenship, sexual orientation, as well as any other category protected by federal, state, or local laws. All employees are prohibited from engaging in unlawful discrimination or otherwise violating the company's equal employment opportunity policy.

In accordance with applicable law, Cornerstone Chemical Company will make reasonable accommodations to the known limitations of an otherwise qualified individual with a disability unless doing so would create an undue hardship on Cornerstone Chemical Company. Any qualified applicant or employee with a disability who requires an accommodation in order to perform the essential functions of the job should contact Human Resources and request an accommodation.

You should report any instance of unlawful discrimination of which you become aware, to your Manager, or a Human Resources Representative, or to David Schnake, Director, Human Resources, regardless of whether you or someone else is the subject of the discrimination. The Company prohibits any and all retaliation for submitting a report of unlawful discrimination and for cooperating in any investigation.

David Schnake
Director of Human Resources



10600 River Rd
Waggaman

Electronic Time & Attendance **Go Live - Live Parallel Run** - September 2, 2013

DELETE    REPLY    REPLY ALL    FORWARD

 Human Resources                                        Mark as unread
Thu 8/29/2013 4:42 PM

**TO: ALL HOURLY EMPLOYEES**

**RE: ELECTRONIC TIME & ATTENDANCE**

Thank you to all employees for your cooperation and assistance during the soft launch period of the ADP Electronic Time Clock system.

On <u>Monday, September 2, 2013</u> we will officially **"Go Live" with the electronic time-clock system.** This will be a live parallel run so employees should continue to punch their paper timecards, however, payroll will be calculated from the electronic time-clock system.

As a reminder, all hourly employees who are reporting for duty are expected to Clock In/Clock Out at the electronic time-clock designated for their work location and be ready to work at the start of their work period.

**The following Time-Clock Procedures and Rules will be in effect with the new system.**

**For Shift Workers:**

- <u>Shift change will occur at 5 AM and 5 PM.</u>

- <u>Start of Scheduled Shift</u> – Employees may begin *Clocking In* anytime between 4:45-5:00 (The system will begin paying at 5:00). There is a 6 minute grace period for punches after 5:00 in which the employee's pay will not be docked, however, any punches after 5:00 will still be treated as an occurrence. Pay will begin being docked for any punches after 5:06.

- <u>End of Scheduled Shift</u> – Employees coming off of shift must make proper relief with the oncoming employee; in general shift relief is expected to occur between 5:00 and 5:15. There will be no rounding or grace period upon *Clock Out.*

- <u>Call In/Quick Backs</u> – Employees who are called in or report for a quick back must select the "Travel" Button on the time clock before *Clocking In* in order to receive travel pay. Call In/Quick Backs will be paid "Punch to Punch".

**For Maintenance & Day Workers:**

- <u>Start of Scheduled Work Day</u> - Employees may begin *Clocking In* no earlier than 30 minutes before their scheduled start time (The system will begin paying at their scheduled start

# 3rd STEP GRIEVANCE MEETING
## COMPANY RESPONSE

**Response date:** 8/6/15
**Meeting date:** 7/23/15

## Grievances:

**2015-17 Alvin Blouin** – Without precedent or prejudice to past, future, or similar situations and as a resolution to this specific grievance the grievant will be offered 16 hours of make-up overtime.

**2015-16 Andrew Bordelon** – The grievant claims that his schedule was changed in order to allow him to attend ERT training and as a result he lost out on wages in violation of the collective bargaining agreement.

The grievant is an Acid Loader on "A" Shift and also a member of the Emergency Response Team (ERT). As a member of the ERT, the grievant had previously attended a 40 hour Inside/Outside Fire Training course from LSU which required an additional 2 days to complete. The additional two days with LSU were scheduled for 7/9 (Thursday) & 7/10 (Friday); this was communicated to the grievant via email on 6/11. There were no alternate days to make-up this training.

The grievant was not moved from "A" shift Saturday (7/11) & Sunday (7/12) for the purpose of attending ERT training; he engaged in a voluntary shift swap with a fellow employee in which he agreed to let another employee work the Saturday (7/11) & Sunday (7/12) shifts that he would otherwise have been scheduled for. Further the grievant did not lose out on wages as he was scheduled to work a 48 hour work week.

There has been no violation of the collective bargaining agreement. This grievance is denied.

**2014-15 Wayne Revere/Craig Buras** – Upon review of this grievance at 3rd step it was discovered that the grievant was in fact bypassed for overtime on the DCS console. The Grievant (Buras) will be offered 6 hours of make-up overtime.

**2015-03 – David Lee** – The grievant alleges that he was denied the back-up crane operator position in violation of the collective bargaining agreement.

The grievant asserts that since he finished all of the self-study written tests he should have been considered qualified for the back-up crane operator position and that based on his seniority he should have been awarded the position.

The grievant completed the written portions of the crane crew self-study program sometime around August of 2014. He was entered into a 3rd party certification program to complete the field testing requirements of the program. The grievant did not successfully complete the field testing requirement and therefore was not qualified at the time of the back-up crane operator bid.

There has been no violation of the collective bargaining agreement. This grievance is denied.

**2015-04 – Shandrof Burks** – Without precedent or prejudice to past, future, or similar situations and as a resolution to this specific grievance the grievant will be made whole with respect to upgrade pay and for time worked but not paid.

**2015-01 – Assistant Trainers –** The grievant alleges that an employee was assigned light duty on assistant trainer job which requires field work that could not be performed.

The Company assigned work to the employee that they were capable and qualified to perform.

There has been no violation of the collective bargaining agreement. This grievance is denied.

**2014-32 – Roger Numa –** Without precedent or prejudice to past, future, or similar situations and as a resolution to this specific grievance the one day suspension served by the grievant on November 21, 2014 will be vacated, records will be removed from his file, and the grievant will be made whole for monies lost.

**2014 – 29 - C. Lacarbo/G. Erwin –** The grievants allege that the written warning they received on October 1, 2014 was unwarranted.

The grievants allege that they were dispatched to the warehouse by supervision to retrieve and install a PSV that had not been checked out by the Machine Shop.

On September 23, 2014 the two grievants were dispatched by their supervisor to pick up the spare PSV at the machine shop when, upon arrival to the machine shop, the PSV could not be located. The spare PSV was then located in W209 by the supervisor and the grievants were instructed to pick-up the PSV at the warehouse.

The grievants acknowledged during the 3rd step meeting that they were initially instructed to retrieve the PSV from the machine shop and that once they retrieved the PSV from the warehouse they were aware that it did not have the required tags from the Machine Shop. The grievants never presented this information to their supervisor and proceeded to install the PSV. In this case the grievants failed to follow FRP-2001 which has very clear instruction with respect to PSV handling, and in particular PSV tagging and verification. They received training on FRP-2001 on August 22, 2014 and should have been well aware of its requirements. The discipline was issued for cause.

There has been no violation of the collective bargaining agreement. This grievance is denied.

**2014 – 34 - G. Erwin/J. Becnel –** The grievants allege that the 3-Day (Becnel) and 5-Day (Erwin) suspension they received were unwarranted.

On 11/13/14, Safety Work Permit #140512 was issued to "Demo Old Dryer Decanter Piping In Purification". Some of the demo work was on the ground floor (working from a scaffold) and the rest was on the second deck with the piping to be demoed running up through the grating to the next level. The piping had been identified with red DEMO stickers in several places. The line to be demoed was identified by the Purification Operator at the jobsite during the permit signing.

During the Safety Work Permit process the grievants were shown the line to be demoed and were explained the scope of the job, at this time they did not have any questions or concerns about locating the correct line to demo. They correctly demoed the line on the first level and then headed for lunch break. Upon their return from lunch the grievants began to demo a live line (MQ line to the Product Column) instead of the line identified at the permit signing. The discipline was issued for cause.

There has been no violation of the collective bargaining agreement. This grievance is denied.

February 9, 2015



**Cornerstone Chemical Company**
Building value, together.

To: Reggie Thomas

From: Brad Chiasson

Re: Verbal Warning

This verbal warning of discipline is being issued for not visually inspecting oil hose before using that resulted in an ammonia release on January 13, 2015. The release was above the RQ limit. Hoses must be inspected before use to ensure the integrity of the hose and also ensure the hose is rated for the service that it is being used for (pressure, temperature, etc.). Should a similar situation arise in the future you will be subject to further discipline, up to and including discharge.

_____
SUPERINTENDENT

_____
SUPERVISOR

_____
EMPLOYEE NAME

_____
UNION REPRESENTATIVE

April 22, 2015


**Cornerstone**
**Chemical Company**
Building value, together.

To: Lamon Robinson

From: Roland Frank

Re: 2 Day Suspension

This letter serves as written notice that you are being suspended for 2 days without pay, you are not to report to work on April 25 and 26, 2015. On April 13, 2015 you issued a permit, 167954, to open the manway on the 1st crystallizer. The lockout procedure was not completed that required the drain valve on P1027 to be opened and tagged opened. Lock Out-Tag Out is one of Cornerstone's Life Saving Rules and this infraction could have lead to a more serious injury of personnel. Your behavior in this situation was unacceptable, and must improve. Should a similar situation arise in the future you will be subject to further discipline, up to and including discharge.

_____
Roland Frank

Refuse to sign
_____
Lamon Robinson

_____
Witness

_____
Union Representative

# RECORD OF COACHING SESSION

Cause for Coaching Session _____

Name: _____         Date: _____

Badge No.: _____     Department Name: _____

Supervisor: _____

Operator: _____

Union Rep.: _____

# RECORD OF VERBAL WARNING

CAUSE FOR VERBAL WARNING _____

Name: _____          Date: _____

Badge No.: _____     Department Name: _____

Supervisor: _____

Operator: _____

Union Rep.: _____


**Cornerstone**
**Chemical Company**

| | | |
|---|---|---|
| **To:** | Union/Management Safety Committee | Date: November 12, 2014 |
| **From:** | S. Willis | |
| **Location:** | Safety | |
| **Extension:** | 6565 | |
| **Subject:** | **UNION/MANAGEMENT SAFETY COMMITTEE MEETING** | |

**Reference:**    Meeting minutes for November 11, 2014

The Union/Management Safety Committee Meeting was held on November 11, 2014.
Those in attendance were as follows:

| | | | |
|---|---|---|---|
| S. Ward | S. Willis | P. Mikesell | W. Mahan |
| E. Williams | B. Towles | G. Leonard | C. Dantin |
| T. Sorapuru | P. Dunham | D. Sampson | W. Eccles Jr. |
| D. Williams | A. Marques | | |

I.     Injury/Accident Experience for October - SHE Manager or Fortier Representative
        A. Four First Aid Injuries for October
        B. Twenty-six First Aid Injuries Y.T.D
        C. Zero OSHA Injuries for October
        D. Three OSHA Injuries Y.T.D.
        E. Zero OSHA Illnesses for October
        F. Zero OSHA Illnesses Y.T.D.
        G. O.R.I. for October was 0.00 and 0.71 Y.T.D.
        H. T.I.F. for October was 9.22 and 6.84 Y.T.D.

II.     Contractors Injuries - TIM Representative
        A. Three First Aid Case for October – TIM (1-Evonik)
        B. Twenty-five First Aid Cases Y.T.D. – TIM (2-Evonik)
        C. Zero OSHA Recordable Injury for October -TIM
        D. Two OSHA Recordable Injury Y.T.D. - TIM
        E. Zero OSHA Illnesses for October - TIM
        F. Zero OSHA Illnesses Y.T.D. – TIM
        G. O.R.I. for October was 0.0% and 0.7 Y.T.D.
        H. T.I.F. for October was 0.02% and 0.01% Y.T.D
        **Subcontractor Injuries**
        I. Three First Aid Case for October – (2)Dyno, Evonik(1)
        J. Twelve First Aid Cases Y.T.D. – U.S. Security(2), Summit, Topcor(2), Jani King, Vecta, Topcor(Evonik), Pala, Dyno(2), Evonik(1)
        K. Zero OSHA Recordable Injury for October –
        L. One OSHA Recordable Injury Y.T.D. – Hot Shot

III.     Contractor Issues
        A. Concern about Dump Trucks driving faster – Landfill work complete drivers are now on the rail expansion project.



IV.     Incident/Injury – Review of October incidents/injuries.

V.     Committee Reports –
   A. Health & Wellness Committee
   1. October was breast cancer awareness month – 10 employees participated in Race for the Cure.
   2. Walking Club complete
   3. Well Body assessments are complete
   4. This month is Diabetes Awareness and Alzheimer's Awareness month.
   B. New Committee – Hazard Recognition Team
   1. Meeting held right after UM meeting.

VI.     New Business
   A. Seven Life Saving Rules
   B. S-109 was issued – Review Responsibilities
   C. Discussion of the name sticker on the contractor badges – 2 Action Items Created.
   D. CEEE Suitability review was last week we scored an 82%
   E. Maintenance Review with USC has moved to Melamine

VII.     Best Practice Sharing
   A. EOP and build 270 has installed new high visibility/non-slip paint and had done a good job with housekeeping and cleaning up oily areas
   B. The forklift in 209 has the clamps for off-loading pipe – Action Item Created for off-shift training.

VIII.     Action Items
   A. CLOSED – Will verify that A. Hatch implemented the new procedure. . Review delivery procedures/policies for equipment and materials including off-shift deliveries for the shift fireman including security issue for drivers not stopping at 209. — S. Willis
   B. CLOSED/COMPLETED Create a sub-team to review Hazard Recognition (Will be November's Safety Topic) – W. Eccles Jr./S. Ward
   C. CLOSED/COMPLETED. Update CES and SWP standards to address medical emergency and changes in permitting requirements for contractors. –S. Willis
   D. CLOSED. Review of V-115 plug in the centrifuge area at melamine. – G. Leonard/D. Williams
   E. CLOSED/COMPLETED – B. Towels to verify the areas of concern were addressed. Weed control and mowing at River Dock – B. Towles
   F. MOVED/CLOSED – This action item was address in a RCA and assigned to the training department. - Training for IE that are new to working in a unit (follow up with Greg Ritter) – P. Durham
   G. In Process. Contractors are carrying pipe in the yard without being tied down - S. Ward
   H. In Process. Contact John Washington and Material Services group to share best practices for recordkeeping with other units – P. Dunham.
   I. In Process Follow up with Nitrogen Signage across the yard – W. Mahan/D. Jeffery
   J. CLOSED/ LETTER SENT TO S. WARD. Waiting on follow up with MAS loading info. Draft letter to close safety shower issue in Material Services – S. Willis
   K. New. When Melamine cannot take a CO2 truck the Night Supers will sometimes


send them back anyway, verify policy with Night Supers – C. Dantin
L.  New. Follow up with the security at Gate 4 to ensure they remove the name stickers on the badges that are turned-in. – W. Mahan/S. Bull
M.  New. Create and send a Safety Alert about Security Issues – S. Bull
N.  New. Get with A. Hatch and get forklift attachment training set up for shift fireman for off-shift delivery of pipe – P. Dunham

IX.  Long Term Parking  (status report at each meeting)

A.  Standards Updated/ under review. – Shauna Willis
  1.  In Process – Hot Work – suggestions provide to SHE dept. – Waiting on D. Lucio
  2.  Respiratory Protection Standard
  3.  Confined Space – Standardized cooling tower entry to be added as procedures

B.  Training improvements: CBT vs. Hands-on, New Hire Orientation, Unit Specific training. LO/TO and Confined Space.

C.  CBT to be updated
  1.  Respiratory Protection
  2.  Hazcom
  3.  Acid Overview
  4.  Incident Investigation

D.  In Process.  Integrate PICS/Access and CCURE – Meeting with IT indicate that integrating with Access is doable but, CCURE is a bigger issue. IT/S. Willis

E.  Implement Permit Initiator for contractors – At GCSC for voice over. Target date available To be required in June 1, 2015 – update in CSE/Hot Work/SWP/S-109

F.  How to improve Safety on the site in 2014 Brainstorming session:
  1.  More Hands on training – LO/TO Schedule for Q1 2014
  2.  Employee lead shift safety meetings
  3.  Tap Resources for Shift Safety meeting – Shift Safety specialist have a topic list, have Jared lead stretches, etc.
  4.  CBT training updates, and updated questions
  5.  More safety activity in yard, increase safety presence
  6.  Best practice sharing with other units, contractors, companies.
  7.  Confined space training prior to Turnaround
  8.  Soft tissue injury prevention presentation
  9.  Training on safety devices – PSV/vents etc.

# Cornerstone Chemical Company

| SUBJECT: | | Policy No. | HR-001 |
|---|---|---|---|
| **Work Rules** | | Date Revised | 9/10/14 |
| APPROVED BY: | | Date Issued | 3/1/2011 |
| *David Schnake, Director of Human Resources* | | Page | 3 of 4 |

4.11   Leaving the job or assigned work area without permission or without being properly relieved, being in an unauthorized work area, quitting early or otherwise wasting time or interfering with production. Changing clothes or bathing at unauthorized times.

4.12   Unsatisfactory work performance

4.13   Falsifying or misrepresenting production or other Company records.

4.14   Disclosure of confidential information to unauthorized persons

4.15   Theft of or unauthorized possession of Company property or property of others

4.16   Neglect of duty including sleeping or apparently sleeping on Company property or on Company time, job abandonment, or other inattention to duty.

4.17   Failure to properly report your absence in advance of the start of your normally scheduled shift

4.18   Excessive tardiness and absenteeism

4.19   Unauthorized posting on Company bulletin boards or defacing Company bulletin boards or material thereon

4.20   Using the Internet at work for non-Cornerstone Chemical Company business. A limited personal use is acceptable during non-work periods (breaks, lunchtime, etc.) consistent with Cornerstone's policy on appropriate use of information systems

4.21   Using abusive or profane language or acting disorderly or immorally

4.22   Solicitation during work time ("work time" does not include authorized break or meal times). Unauthorized distribution of written or printed matter on Company property during work time

4.23   Performing unauthorized personal work on company time

## Administration

The Human Resource Department is responsible for coordinating the fair and consistent administration of employee disciplinary activity, have general oversight of the investigatory process, and have approval authority for disciplinary suspensions and discharge. Each supervisor is responsible for conducting a fair and objective investigation into incidents where a work rule violation may have occurred and are responsible for initiating corrective actions when work rule violations are found to occur. Note that nothing hereto in this policy is intended to



## U.S. Equal Employment Opportunity Commission
### New Orleans Field Office

1555 Poydras Street
Suite 1900
New Orleans, LA 70112
(504) 595-2826
TDD: 1-800-669-6820
Fax: (504) 595-2884
1-800-669-4000

Respondent: CORNERSTONE CHEMICAL
EEOC Charge No.: 461-2015-00894
FEPA Charge No.:

March 30, 2015

Tracy S. Sorapuru
220 Beaupre Dr
Luling, LA 70070

Dear Ms. Sorapuru:

This is to acknowledge receipt of the above-numbered charge of employment discrimination against the above-named respondent. Please use the "EEOC Charge No." listed above whenever you call us about this charge. The information provided indicates that the charge is subject to:

[ X ]   Title VII of the Civil Rights Act of 1964 (Title VII)
[ X ]   The Age Discrimination in Employment Act (ADEA)
[   ]   The Americans with Disabilities Act (ADA)
[   ]   The Equal Pay Act (EPA)
[   ]   The Genetic Information Nondiscrimination Act (GINA)

You need do nothing further at this time. We will contact you when we need more information or assistance. A copy of the charge or notice of the charge will be sent to the respondent within 10 days of our receipt of the charge as required by our procedures.

Please be aware that we will send a copy of the charge to Louisiana Commission On Human Rights P.O. Box 94094 Baton Rouge, LA 70804 as required by our procedures. If the charge is processed by that agency, it may require the charge to be signed before a notary public or an agency official. Then the agency will investigate and resolve the charge under their statute. If this occurs, section 1601.76 of EEOC's regulations entitles you to ask us to perform a Substantial Weight Review of the agency's final finding. To obtain this review, a written request must be made to this office within 15 days of receipt of the agency's final finding in the case. Otherwise, we will generally adopt the agency's finding as EEOC's.

While your charge is pending, please notify us of any change in your address, or where you can be reached if you have any prolonged absence from home. Your cooperation in this matter is essential.

Sincerely,

Elaine Jordan
Investigator Support Asst
(504) 595-2830

Office Hours: Monday – Friday, 8:00 a.m. - 4:30 p.m.
www.eeoc.gov

Enclosure(s)

*************************************Usage Notice************************************

This computer system including all related equipment, network devices
(specifically including Internet access), are provided only for authorized use.
Authorized use is limited to activities which are for the benefit of
Cornerstone, Evonik or Kemira, all other use is unauthorized, except where
specifically authorized for the advancement of the companies' interests. All
computer systems and related equipment and devices may be monitored for
compliance with this policy and other business reasons and all other lawful
purposes, including to ensure that their use is authorized, for management
of the system, to facilitate protection against unauthorized access, and to
verify security procedures, survivability and operational security.

Monitoring includes active attacks by authorized personnel and their entities
to test or verify the security of the system. During monitoring, information
may be examined, recorded, copied and used for authorized purposes. All
information including personal information, placed on or sent over this
system may be monitored. Thus, an individual user of the system does not
have an expectation of privacy. Use of this system, authorized or
unauthorized, constitutes consent to monitoring and may subject you to
criminal prosecution for any illegal use or conduct. Information collected
during monitoring may be used as evidence, or for administrative, civil
and /or criminal or other adverse action, and may be turned over to the
appropriate authorities. Use of this system constitutes consent to monitoring
for all of these purposes.

Additional to
exhibit 6 A



**Building value, together.**

An employee may have outside employment so long as the outside employment is not incompatible or does not interfere with his or her employment with Cornerstone and so long as such employment is fulfilled solely during off-duty hours. Any outside employment by any person holding an officer title from Cornerstone should be discussed in advance with the appropriate Executive Officer and written approval obtained from the Board of Directors. No such employment will be approved if it will or could result in a conflict of interest, a perception of a conflict of interest or if the nature of the outside employment would or could reflect negatively on Cornerstone's reputation.

## Receiving gifts

No gifts, regardless of value, are to be encouraged or solicited by Cornerstone employees in connection with company business or responsibilities. However, infrequent gifts in kind such as fruit, flowers or candy may be accepted by employees as expressions of courtesy and appreciation so long as their monetary value is minimal and does not represent a "substantial gift." Substantial gifts (over $100 in value) are not to be accepted, nor, as a general rule, are to be given. For personal protection, employees should never accept a gift in any form or amount if it could appear that the gift influenced them, or was intended to influence them, in dealing with the giver, or if the gift could prove compromising or embarrassing. Employees should never accept a gift of money, a gift card convertible to cash or securities in any amount.

## Corporate identity

To ensure a consistent and effective corporate identity approach worldwide, Cornerstone corporate identity protocol and rules regarding use of the Cornerstone logo should be strictly adhered to. Any deviations from the corporate identity protocol must be submitted to the Cornerstone Human Resources Department for approval before being implemented.

## Internet use / IT code of conduct

As a general rule, all IT related resources and facilities are provided only for internal use and/or business related matters, not for personal use. IT facilities which have been provided to employees should never be used for personal gain or profit, should not be misused during work time, and remain the property of Cornerstone. Disclosure or dissemination of confidential or proprietary information regarding Cornerstone, its products, or its customers outside the official communication structures is strictly prohibited.

IT-related resources and facilities should not be used in any way that is unethical or illegal, or that could embarrass, defame, misrepresent, or convey an unjust or unfavorable impression of Cornerstone or its business affairs, employees, suppliers, customers, competitors, or stakeholders. Unauthorized access to information and information systems is prohibited. Access must be authorized by the owners of the information and in line with the user's job description. Information systems can be secured by personal passwords and/or additional authentication

# Life Saving Rules - Safety Alert - Why do you come to work?

**WS**  **Willis, Shauna**

To: #All Fortier Employees;

Reply all |

Fri 11/7/2014 1:28 PM

why do you come to wo...
475 KB

1 attachment (475 KB)   Download all

# Why do you come to work?

What would it mean to your friends and family if you did not come home from work?  We all have loved ones that are counting on us and no one comes to work with the intent to not return home.  At Cornerstone we want all of our employees to enjoy their time with their loved ones so, and to raise awareness of the kinds of hazards that can be life-threatening, life-altering and sometimes tragically life-ending we are rolling out our Life-Saving rules.

We have identified 7 safety standard that have potential for life-threating consequences.

- Safety Work Permits (S-301)
-



Confined Space Entry (S-303)
- Hot Work (S-304)
- Line-breaking (S-306)
- Lock Out/Tag Out (S-305)
- Fall Protection (S-18)
- Stand-by Buddy (S-24)

The SHE Department will be distributing magnetic picture frames to all Cornerstone employees to so you can remember why you work!



These kiddos are part of the reason I work! This is my niece and nephew, Keily and Weston.

*Shauna Willis*

**Process Safety Engineer**


**Cornerstone Chemical Company**

10800 River Road, Waggaman LA 70094

Shauna.Willis@cornerstonechemco.com

Office:504-431-6565

Cell: 479-381-1777