UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

TRACY SORAPURU                                CIVIL ACTION

VERSUS                                         NUMBER: 17-07448

CORNERSTONE CHEMICAL COMPANY                   SECTION: "N"(5)

## **ORDER AND REASONS**

Before the Court is the motion for summary judgment filed by Defendant, Cornerstone Chemical Company ("Cornerstone"). (Rec. doc. 18). Plaintiff, Tracy Sorapuru ("Sorapuru"), filed an opposition (rec. doc. 29)[1], and the Court heard oral argument on the motion on July 11, 2018. (Rec. doc. 34). Having considered the parties' briefs, the exhibits attached thereto, and the argument of counsel, the Court rules as follows.

### **Factual Background**[2]

Cornerstone's Fortier Plant is located on the Mississippi River in Waggaman, Louisiana. At Fortier, Cornerstone manufactures "building block" chemicals for both its own use and for sale to other companies. The plant employs approximately 450 union employees who are represented by Steelworkers Local 13-447. Sorapuru was one of those employees.

Sorapuru was a shift firefighter for Cornerstone. The duties of a shift firefighter include making rounds throughout the plant to check on all fire protection and suppression

---

[1] The opposition was not timely filed, apparently due to some confusion on the part of Plaintiff's counsel regarding the submission date. Cornerstone filed a motion to strike that opposition as untimely (rec. doc. 30), which the Court denied, finding that any misunderstanding about the deadline for filing the opposition was excusable and that Cornerstone suffered no prejudice due to the late filing because it was ultimately filed eight days before the hearing. (Rec. doc. 34). Cornerstone's motion to strike also sought to have almost all of Sorapuru's exhibits stricken for a variety of reasons. While it denied the motion to strike, the Court advised the parties at the hearing (as it does again here) that it would consider the objections raised to Sorapuru's exhibits as objections made pursuant to Federal Rule of Civil Procedure 56(c)(2).

[2] This factual background is taken primarily from Cornerstone's brief, as they were not disputed by Plaintiff in her opposition.

systems. Sorapuru was one of four shift firefighters who worked alternating 12-hour shifts that were either 5:00 a.m. to 5:00 p.m. or 5:00 p.m. to 5:00 a.m. Cornerstone considered shift firefighters to be "on duty" for their entire shift. The position is self-directed with little immediate supervision or oversite.

On August 26, 2014, then Warehouse Manager Andreas Hatch ("Hatch") informed Sorapuru that he had found a document belonging to her on the warehouse printer. When Sorapuru came to pick up the document on August 28, 2014, Hatch informed her that the document he found was real estate-related and that she was forbidden from using Cornerstone's equipment to carry on her real estate business. Hatch then threw the document away and informed Sorapuru that he did not want to see any real estate-related documents again. Additional discipline against Sorapuru was not pursued.[3]

On March 20, 2015, Sorapuru's supervisor, Stephen Bull ("Bull") informed Employee Relations Manager, Aaron Marques ("Marques"), that another real estate document had been found on the firehouse printer. On March 23, 2015, Marques requested that Tim Plunkett ("Plunkett"), Cornerstone's IT Director, pull the internet logs and search the computer records for all four of the shift firefighters. Plunkett copied the electronic profiles of all four shift firefighters and turned them over to Marques. A review of Sorapuru's secure profile revealed a significant number of real estate documents. According to Cornerstone, no non-Cornerstone commercial work documents were found on any of the other three shift firefighter's unique login credentials or partitions.

---

[3] It is not entirely clear whether Sorapuru disputes that this episode (and the verbal warning) actually occurred, because she did not address it in her opposition memorandum or in her "statement of material facts" filed in conjunction with the opposition. (Rec. docs. 29, 29-2). She does, however, claim that "not one disciplinary record was in her file at the time of her termination." (Rec. doc. 29-2 at p. 2). In any event, the Court does not find the matter to be material because, as explained below, it is clear that Sorapuru was qualified for her position at the time of her termination.

Under Sorapuru's secure profile on the firehouse computer, Marques also found pictures of real estate in her photos folder, ".pdf" files labeled as real estate documents and contracts, and folders entitled "clients" and "misc." Marques believed that, because these documents were not related to Cornerstone's business, they were unauthorized.

On March 27, 2015, Marques discussed the matter with Bull. At that time, Sorapuru was on vacation until April 5, 2015. Prior to her return, Marques continued to investigate the contents of Sorapuru's profile and internet usage logs. The results of the investigation revealed that Sorapuru's profile contained numerous documents related to real estate, one of which was identical to the document found on the firehouse printer on March 20th.

After reviewing the documents, Marques concluded that all of the documents were real estate documents, unrelated to Cornerstone's business. Marques also checked the Xerox equipment in the warehouse and found a number of these documents had been scanned to the network server or Sorapuru's email address. The documents were subsequently downloaded onto Sorapuru's secure profile.

On April 14, 2015, Marques requested that Sorapuru meet with him to discuss the results of the Company's investigation into the real estate document found on the firehouse printer. Sorapuru was accompanied at that meeting by union representatives. At the meeting, Marques presented Sorapuru with the document that was found on the firehouse printer. She denied ever seeing the document and stated that it did not belong to her. As a result of the meeting and what Marques believed was Sorapuru's failure to cooperate in the investigation, Marques presented Sorapuru with a "Letter of Suspension Pending Final Disposition."

On April 21, 2015, Marques met with Sorapuru and union representatives for a "Final Disposition" meeting. During the meeting, according to Cornerstone, Sorapuru continued to deny that she engaged in any form of work related to her real estate job while she was on duty at Cornerstone. The meeting concluded with Marques informing Sorapuru that she was terminated for using Cornerstone's IT system to engage in activities in furtherance of her outside real estate employment while on duty and being paid by Cornerstone.

Marques further determined that Sorapuru's use of Cornerstone's resources and equipment in connection with her outside job violated the company's Code of Conduct policy, and the amount of real estate business that she engaged in while on duty as a shift firefighter as evidenced by the volume of documents found on her secure profile, as well as the activity on her internet search log, amounted to a gross disregard of Cornerstone's Code of Conduct.

Following the April 21, 2015 meeting, Marques provided Sorapuru with a "Final Disposition Letter" confirming her termination for performing work in furtherance of her outside employment while on duty.

Steelworkers Local 13-447 subsequently filed a Grievance on Sorapuru's behalf, stating that her discharge was not for "just cause" and that she should be reinstated. The matter proceeded to arbitration, where Sorapuru was represented by counsel.

Arbitrator Daniel Jennings ("Jennings") was mutually selected by Steelworkers Local 13-447 and Cornerstone to arbitrate Sorapuru's grievance. On September 23, 2015, Jennings conducted the arbitration hearing at which both parties were represented by counsel. The issue presented for arbitration was framed as: "Was [Sorapuru] terminated (discharged) for just cause? If not, what is the appropriate remedy?"

At the hearing, the parties were afforded the opportunity for the introduction of evidence, examination and cross-examination of witnesses, and oral arguments. The parties also submitted post-hearing briefs. In the Opinion and Award of the Arbitrator, Jennings noted that "both parties were well represented for the case at bar." After the evidentiary hearing and submission of post-hearing briefs, Arbitrator Jennings determined that:

> In summary, based on all the evidence presented during the present arbitration hearing and the Parties' post hearing briefs, this Arbitrator is convinced that [Sorapuru] has been discharged for just cause.

(Rec. doc. 18-8, p. 61).

Jennings was further "convinced that [Sorapuru] used Company computer equipment to support her activities as a real estate agent while on Company time." (*Id.* at p. 60).

Prior to the issuance of the Opinion and Award of the Arbitrator, on April 23, 2015, Sorapuru had filed a Charge of Discrimination with the EEOC. That charge made two allegations: (1) wrongful discharge based on age and/or sex discrimination and (2) hostile work environment based on age and/or sex discrimination. On May 1, 2017 the EEOC issued a no-cause determination and dismissed Sorapuru's charge. (Rec. doc. 18-10). Sorapuru then filed this lawsuit *pro se* on August 3, 2017.

In her original complaint, Sorapuru complained of retaliation, harassment, and age discrimination. (Rec. doc. 1). On January 3, 2018, Sorapuru, still acting *pro se*, filed an amended complaint, adding claims of gender discrimination and hostile work environment. (Rec. doc. 9). Current counsel for Sorapuru, Natalie Blackman, moved to enroll as counsel on June 1, 2018. (Rec. doc. 17). Cornerstone filed the instant motion for summary judgment the following day. (Rec. doc. 18). On June 4, 2018, Ms. Blackmon was enrolled as counsel of record and on July 3, 2018, she filed an opposition memorandum on behalf of Sorapuru. (Rec.

docs. 19, 29). In that opposition, Sorapuru abandoned all claims in the case save her claim for gender discrimination. (Rec. doc. 29, p. 7).

## APPLICABLE LAW

*I. Summary Judgment Standard*

"A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought." **Fed.R.Civ.P.** 56(a).

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> > (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
>
> *Id.*, Rule 56(c).

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.*, Rule 56(a).

Where, as here, the movant will not bear the burden of proof at trial, that party need only alert the Court that there is an absence of evidence in support of one or more elements essential to Plaintiff's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553-54 (1986). "If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Engstrom v. First*

*Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir.), *cert. denied*, 516 U.S. 818, 116 S.Ct. 75 (1995). Where the non-movant fails to make a sufficient showing, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322–23, 106 S.Ct. at 2552.

The non-movant's burden is not satisfied by "some metaphysical doubt as to material facts," conclusory allegations, unsubstantiated assertions, speculation, the mere existence of some alleged factual dispute, or by "only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(internal citations omitted). Rather, the non-movant must point to specific portions of the materials in the record, including but not limited to depositions, documents, affidavits or declarations. **Fed.R.Civ.P.** 56(c)(1)(a). Germane to this case, "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." *Id.*, Rule 56(c)(4).

*II. Gender Discrimination*

Cornerstone has moved for summary judgment on the basis that the evidence is insufficient to establish a prima facie case of gender discrimination. As a plaintiff/employee opposing such a motion, Sorapuru carries the burden of establishing a prima facie case of discrimination, which she can do by satisfying the four-prong test set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817 (1973). Under *McDonnell Douglas*, Sorapuru must show: (1) she is a member of protected class, (2) she was qualified to be a shift firefighter, (3) she suffered an adverse employment action, and (4)

others outside the protected class were treated more favorably than her. *See id.* at 802, 93 S.Ct. at 1824.

Once an employee has made out a prima facie case, an inference of intentional discrimination is raised and the burden of production shifts to the employer, who must offer an alternative nondiscriminatory explanation for the adverse employment action. *Lee v. Kansas City Southern Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009)(citing *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824). If the employer can provide a legitimate nondiscriminatory explanation, the inference of discrimination drops out and the burden shifts back to the employee to demonstrate that the employer's explanation is merely a pretext for discriminatory bias. *Id.* (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255-56, 101 S.Ct. 1089, 1094-95 (1981)).

**ANALYSIS**

Sorapuru easily satisfies the first three prongs of the *McDonnell Douglas* test in this case. As a female, Sorapuru is a member of a protected class, and the evidence demonstrates she was qualified for to be a shift firefighter and was terminated from that position by Cornerstone.

*I.* "Similarly Situated" Comparators

Given that Sorapuru satisfies the first three prongs of the *McDonnell* Douglas test, the Court turns to the key question of whether Sorapuru has submitted sufficient evidence demonstrating that similarly situated males were treated more favorably. In determining whether the proffered male comparators were similarly situated to Sorapuru, the Court employs the "nearly identical" standard, as articulated by the Fifth Circuit: "We … have explained consistently that for employees to be similarly situated those employees'

8

circumstances, including their misconduct, must have been 'nearly identical.'" *Perez v. Texas Department of Criminal Justice, Inst'l Div.*, 395 F.3d 206, 213 (5th Cir. 2004), *cert. denied*, 546 U.S. 976, 126 S.Ct. 545 (2005)(citing *Little*, 924 F.2d at 97). "[N]early identical" is not synonymous, however, with "identical," and "[t]he employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared held the same job or responsibilities, *shared the same supervisor or had their employment status determined by the same person*, and have *essentially comparable violation histories.*" Lee, 574 F.3d at 260 (emphasis added; footnotes omitted). "[C]ritically, the plaintiff's conduct that drew the adverse employment decision must have been 'nearly identical' to that of the proffered comparator who allegedly drew dissimilar employment decisions." *Id.* (footnote omitted). Similarly, "it is sufficient that the ultimate decisionmaker as to employees' continued employment is the same individual, even if the employees do not share an immediate supervisor." *Id.* at 260-61.

In support of her argument that she has satisfied her burden of showing that she and her numerous proffered comparators were similarly situated, Sorapuru cites to a number of exhibits attached to her opposition, each of which suffer from serious flaws. In evaluating the merits of her arguments as to each comparator, the Court must also assess the evidentiary sufficiency of the materials cited by Sorapuru in support of those arguments.[4]

In her "Statement of Material Facts," Sorapuru sets forth the names of some 11 different co-employees she claims to be comparators. In support of her suggestion that each

---

[4] Cornerstone has raised legitimate objections to each of the referenced exhibits pursuant to Rule 56(c)(2). (Rec. doc. 30).

of these male[5] employees was "similarly situated" to her pursuant to the *McDonnell Douglas* framework, she cites a panoply of material. The Court will address each comparator in order.

### A. Corey Granier

Corey Granier ("Granier) is said by Sorapuru to be a male who worked as a shift firefighter in Sorapuru's department. He is also said to have "crashed the entire internet while watching a movie at work during work hours." (Rec. doc. 29-3 at pp. 5, 8).[6] Sorapuru claims he was not terminated, but was suspended for three days and further argues that he shared the same supervisor as her, had his employment terminated by the same person as her, and had an "essentially comparable violation history as she did. (Rec. doc. 29-2).

In support of these statements, she cites, among other things, a single page of Aaron Marques' deposition, in which Marques testified that Granier was a firefighter when he was responsible for an "incident" in which he used company computers "to watch a movie." (Rec. doc. 29-3 at p. 3). In the single page of context-less deposition testimony attached to Sorapuru's opposition, Marques could not recall if the incident shut down Cornerstone's internet or slowed down the network significantly. He did state that Granier was not terminated, but notably, he did not testify that he made that decision. (*Id.*).

Sorapuru also cites two sworn declarations attached to her opposition to support her argument that Granier is a suitable comparator. (Rec. doc. 29-3 at pp. 4, 7). The first declarant is Debbie Williams ("Williams"), who states that she was employed by Cornerstone

---

[5] In many cases there is no summary judgment *evidence* cited to establish the gender of some of these employees, other than their names and conclusory statements by Sorapuru or her counsel that they are, in fact, male. For reasons that will become clear, the Court need not address in any detail that particular evidentiary shortcoming.

[6] It does not appear that Granier actually achieved the impressive feat of crashing the entire internet, but rather he caused some sort of outage or slowdown of Cornerstone's internet capability for a period of time. (Rec. doc. 29-3 at p. 3).

and acted as Union Steward and Officer Board Member in 2013 and 2015 respectively. (*Id.*). The other declarant is Dwayne Jeffrey ("Jeffrey"), who states that he was employed by Cornerstone and served as President of the Union in 2015 and "Safety member, which make me (knowledgeable about the 7 lifesaving rules)." (*Id.* at p. 7).

As to Granier, both Williams and Jeffrey state (in virtually identical verbiage) that they were aware of Granier violating Cornerstone's internet use policy and "crashing the entire internet," and that, despite Granier violating "the same internet and computer use policy as the plaintiff," Granier was suspended rather than terminated. Neither declarant explains how they came to be aware of these things, neither explains the basis of their opinion that Granier and Sorapuru violated the same policies and, most notably, neither states the identity of the person who decided to suspend Granier.

First, as to the notion that Granier and Plaintiff were subjected to different discipline for essentially comparable violation histories, the evidence cited by Sorapuru is insufficient to establish such a fact for purposes of meeting her burden under *McDonnell Douglas*. In an affidavit attached to Cornerstone's motion for summary judgment, Marques specifically affirms that he personally made the decision to terminate Sorapuru's employment because of her "gross disregard of the Company's Code of Conduct," to wit:

- "Sorapuru's profile contained hundreds of documents related to real estate, one of which was identical to the document found on the Firehouse printer on March 20. Further, Sorapuru's internet logs indicated that she had over nine thousand (9,000) usage hits from real estate websites in the previous 90 days."

- "The investigation also revealed that Sorapuru's profile contained 7,060 usage hits to shopping websites from January 1, 2015 through April 15, 2015. This is more than seven times the number of usage hits to any incidental website of the other three shift firefighters."

- Sorapuru never provided me with an answer as to why she maintained all of the real estate documents, some of which contained bank account numbers and personal identifier information (i.e. social security numbers, home addresses, and telephone numbers) belonging to her "clients," on Cornerstone's computer systems."

- I determined that her use of Company IT equipment in furtherance of her outside job violated Cornerstone's Code of Conduct policy, and the amount of real estate business that she engaged in while on duty as a shift firefighter as evidenced by the documents found on her secure profile as well as the activity on her internet search log, amounted to a gross disregard of the Cornerstone's Code of Conduct."

- The Code of Conduct referenced by Marques (a "true and correct" copy of which he attached to his affidavit) states: "An employee may have outside employment so long as the outside employment is not incompatible or does not interfere with his or her employment with Cornerstone and so long as such employment is fulfilled solely during off-duty hours."

(Rec. doc. 18-7).

Marques' affidavit testimony quoted above stands unrefuted by any competent summary judgment evidence. Rather than dispute the sworn statements of Marques in her opposition or in the exhibits attached thereto, Sorapuru simply argues that, because Granier and she both violated work rules associated with internet use, their violation histories are of "comparable seriousness"[7] so as to satisfy the fourth prong of the *McDonnell Douglas* test. The summary judgment evidence, including Marques' unchallenged affidavit testimony, refutes this argument.

The undisputed evidence establishes that Marques terminated Sorapuru because "the amount of real estate business that she engaged in while on duty as a shift firefighter as evidenced by the documents found on her secure profile as well as the activity on her internet search log, amounted to a gross disregard of the Cornerstone's Code of Conduct."

---

[7] *Lee*, 574 F.3d at 260–61.

(Rec. doc. 18-7). On the other hand, taking Sorapuru's argument and the statements of Williams and Jeffrey as true (despite the absence of any indicia of personal knowledge in their respective declarations concerning why Granier was disciplined), Granier was guilty only of watching a single movie on the company's internet system. When compared to the undisputed evidence that, between January 1, 2015 through April 15, 2015, Sorapuru's profile indicated more than seven times the number of outside internet usage hits than the other three shift firefighters and her storage on Cornerstone's system of the personal information of her real estate clients, her violations cannot reasonably said to be "essentially comparable" to Granier's. *Lee*, 574 F.3d at 260–61.

This is all notwithstanding the glaring absence of any evidence indicating that Marques (who decided to terminate Sorapuru) played any role in determining Granier's discipline.

For these reasons, Granier is not a suitable comparator to Sorapuru.

**B. Lamon Robinson**

Sorapuru states in her "Statement of Material Facts" that "Lamon Robinson ["Robinson"], male, was not terminated by Defendant, although he violated a policy subject to immediate termination." (Rec. doc. 29 at p. 12). In support of this statement she cites what purports to be a letter to Robinson from Roland Frank advising the former of a two-day suspension for violation of a safety rule. (Rec. doc. 29-3 at p. 18). The document is unverified hearsay and is not sufficient evidence to rebut Cornerstone's summary judgment evidence or to establish that Sorapuru and Robinson were similarly situated. Even if it were admissible, the evidence cited fails to establish that Robinson and Sorapuru shared the "same job or responsibilities, shared the same supervisor or had their employment status

13

determined by the same person, [or had] essentially comparable violation histories."[8] *Lee*, 574 F.3d at 260–61. For these reasons, Robinson is not a suitable comparator.

**C. Reggie Thomas**

Sorapuru states in her "Statement of Material Facts" that "Reggie Thomas, failed to inspect an oil hose, causing a release of ammonia. Defendant did not terminate Thomas. For that egregious violation, Defendant merely issued a written notice." (Rec. doc. 29 at p. 12). In support of this statement she cites a "[v]erbal warning of Reggie Thomas," which was given him by Brad Chiasson for not visually inspecting an oil hose." (Rec. doc. 29-3 at p. 19). Like the Robinson memo discussed above, this verbal warning document is unauthenticted hearsay and is not sufficient evidence to rebut Cornerstone's summary judgment evidence or to establish that Sorapuru and Thomas were similarly situated. And even if it were admissible, the document fails to establish that Thomas and Sorapuru shared the "same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, [or had] essentially comparable violation histories." *Lee*, 574 F.3d at 260–61. For these reasons, Robinson is not a suitable comparator.

**D. Thomas Shilleci**

Sorapuru states in her "Statement of Material Facts" that "Thomas Shilleci ["Schilleci"], male[,] was not terminated by Defendant, although he violated a policy subject to immediate termination. Shilleci failed to get a safety work permit signed and authorized prior to commencing a job." (Rec. doc. 29 at p. 12). In support of this statement she cites what appears to be a document from a grievance hearing on a grievance filed by Schilleci

---

[8] Indeed, the document cited by Sorapuru seems to show that someone other than Marques, *i.e.*, Roland Frank, was the decisionmaker in Robinson's case.

14

after he received a five-day suspension. (Rec. doc. 29-3 at p. 20). Like the documents discussed above, this document is unauthenticated hearsay and is not sufficient evidence to rebut Cornerstone's summary judgment evidence or to establish that Sorapuru and Schilleci were similarly situated. And even if it were admissible, the document fails to establish that Schilleci and Sorapuru shared the "same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, [or had] essentially comparable violation histories." *Lee*, 574 F.3d at 260–61. For these reasons, Schilleci is not a suitable comparator.

### E & F. Brent Bourgeois and Jimmy Becnel

Sorapuru states in her "Statement of Material Facts" that "Brent Bourgeois and Jimmy Becnel, both male employees of the Defendant, committed a Life Saving Rule Violation by violating the LockOut/Tag Out procedure. This is violation of Defendant Work Rule 3.2.5, located in section 3, which makes the violation subject to immediate termination. Brent was permitted to keep his job based on his many years of work. He was hired at the same time as Plaintiff." (Rec. doc. 29 at p. 12). In support of this statement, she cites a single page of an unauthenticated copy of what purports to be "Work Rules." (Rec. doc. 29-3 at p. 1). And although she does not cite them, the declarations of Williams and Jeffrey both state that they are aware that Bourgeois and Becnel violated a "7-lifesaving rule" and were not terminated. Similar to the deficiencies discussed above, the "Work Rules" document is unauthenticted hearsay and lacks any context and is therefore not sufficient evidence to rebut Cornerstone's summary judgment evidence or to establish that Sorapuru was similarly situated to Bourgeois, and Becnel. Similarly, the two declarations lack any foundational information describing how either declarant learned the "facts" stated in their declarations and, even if

15

they did, the declarations lack any information indicating that Bourgeois, Becnel, and Sorapuru shared the "same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, [or had] essentially comparable violation histories." *Lee*, 574 F.3d at 260–61. For these reasons, Bourgeois and Becnel are not suitable comparators.

### G. Sean Julien

Sorapuru states in her opposition memorandum that "Sean Julien, male, was not terminated by Defendant, although he violated a Life Saving policy subject to immediate termination." (Rec. doc. 29 at p. 13). In support of this statement, she cites Williams' declaration, which states merely that she is "aware" that Julien violated a safety rule and was suspended rather than terminated. (Rec. doc. 29-3 at p. 5). However, nothing in that declaration establishes or even suggests that Julien and Sorapuru shared the "same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, [or had] essentially comparable violation histories." *Lee*, 574 F.3d at 260–61.[9] For these reasons, Julien is not a suitable comparator.

### H. Allen Fletrich

Sorapuru states in her opposition memorandum that "Allen Fletrich, male, was not terminated, although he had moved through all three steps of progressive discipline." (Rec. doc. 29 at p. 14). In support of this statement, she cites Williams' declaration, which states merely that Fletrich was not terminated despite committing multiple violations on multiple occasions and moving through all the steps of Cornerstone's progressive disciplinary system. (*Id.*). There is nothing in Williams' declaration indicating how she "knows" this information

---

[9] It is also worth noting that Julien is not mentioned in Sorapuru's "Statement of Material Facts."

and the declaration is silent as to whether Fletrich and Sorapuru shared the "same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, [or had] essentially comparable violation histories." Lee, 574 F.3d at 260–61. For these reasons, Fletrich is not a suitable comparator.

**I, J, & K.    Dwight Thomas, A.J. Rousell and "Lacardio"**

In her "Statement of Material Facts," Sorapuru makes wholly unsubstantiated remarks about these three individuals with no citation whatsoever to any evidence in the record. Because these remarks are completely unsupported by any evidence, the Court need not even consider these individuals' suitability as comparators.

In sum, the Court finds that the evidence cited by Sorapuru in support of her argument that these 11 individuals are suitable comparators is insufficient to carry her burden under *McDonnell Douglas* and *Lee*. Even if one or more of these individuals could be deemed similarly situated to Sorapuru, however, her gender discrimination claim would fail for the following additional reasons.[10]

*II.    Legitimate Nondisciminatory Reason for Termination*

Once the plaintiff establishes her prima facie case, the defendant must articulate a legitimate nondiscriminatory reason for its actions. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817. If the defendant does so, the burden shifts to the plaintiff to rebut the defendant's explanation either by showing that the reason given is pretext for unlawful discrimination, or the proffered reason, while true, is only one of the reasons for its conduct, and another

---

[10] *Cf. Maldonado v. Mattress Direct, Inc.*, No. 13-CV-6773, 2015 WL 1415735 at *7 (E.D. La. Mar. 26, 2015) ("The foregoing alone would support a conclusion that summary judgment in favor of Defendant was warranted. Nevertheless, the Court has further grounds for doing so, which are discussed below").

17

motivating factor is the plaintiff's protected characteristic. *Burrell v. Dr. Pepper/Seven Up Bottling Group, Inc.*, 482 F.3d 408, 411–12 (5th Cir. 2007).

Here, even if the Court were to assume that Sorapuru met her burden of establishing a prima facie case by identifying a suitable comparator, Cornerstone has articulated a legitimate, nondiscriminatory reason for her termination which is supported by competent summary judgment evidence. Marques, the individual responsible for the decision to terminate Sorapuru, explained in detail in his sworn declaration why he made that decision. As set forth in detail above, Marques decided to terminate Sorapuru for "gross disregard of Cornerstone's Code of Conduct" due to her using company IT resources to conduct outside business, storing the personal information of her real estate clients on the company's server, and excessive use of the internet for non-work related functions while on duty. (Rec. doc. 18-7).

Marques' sworn statements are made from personal knowledge and are not disputed by any evidence cited to by Sorapuru. Indeed, they find additional support in the Opinion and Award of the Arbitrator ("Opinion") attached to Marques' declaration. In a thorough, 63-page Opinion, the arbitrator found that "both parties were well represented in the case" and that "based on all the evidence presented during the present arbitration hearing and the parties' post hearing briefs, this Arbitrator is convinced that Grievant Tracy Sorapuru has been discharged for just cause." (Rec. doc. 18-8 at pp. 53, 61).

The Opinion, the admissibility of which has not been objected to by Sorapuru, is "highly probative" of the existence of discriminatory animus. *Graef v. Chemical Leaman Corp.*, 106 F.3d 112, 117 (5th Cir. 1997)("on issues relating to the existence of discriminatory or retaliatory animus, the [arbitration] award can be highly probative, and wholly ignoring it

18

can constitute an abuse of discretion")(citing *Owens v. Texaco, Inc.*, 857 F.2d 262, 264–66 (5th Cir. 1988), *cert. denied*, 490 U.S. 1046, 109 S.Ct. 1954, 104 L.Ed.2d 423 (1989)).

Based upon Marques' statements in the declaration attached to Cornerstone's motion, which is supported in turn by the Arbitrator's Opinion, the Court finds that Cornerstone has articulated a legitimate, nondiscriminatory reason for terminating Sorapuru.

*III. Pretext*

Again assuming Sorapuru has made a prima facie case and upon the Court's finding that Cornerstone has met its burden of demonstrating a legitimate nondiscriminatory reason for her termination, the burden would shift to the Plaintiff to rebut the Defendant's explanation either by showing that the reason given is pretext for unlawful discrimination, or the proffered reason, while true, is only one of the reasons for its conduct, and another motivating factor is the Plaintiff's protected characteristic.

Sorapuru has not offered *any* evidence of pretext in this case. In fact, the word "pretext" appears but once in her entire brief – in the table of contents: "D. Analysis of Defendant's Alleged Non-Discriminatory Reason and Pretext Discrimination." (Rec. doc. 29 at p. 2). Alas, a review of section "D" of the brief reveals no analysis whatsoever of pretext. With no citation to any evidence – or even any argument – to establish pretext, Sorapuru cannot overcome Cornerstone's articulation of a legitimate, nondiscriminatory reason for her termination. Even if the Court ignored the other evidentiary maladies identified throughout this opinion, Sorapuru's failure to address pretext is fatal to her claim of gender discrimination.

For the reasons set forth above, the motion for summary judgment filed by Defendant, Cornerstone, is hereby **GRANTED**. Judgment shall be entered accordingly.

New Orleans, Louisiana, this 25th day of __July__, 2018.

                                              **MICHAEL B. NORTH**
                                      **UNITED STATES MAGISTRATE JUDGE**